IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00665-PAB-CYC

STEVEN ANGELO APODACA,

Plaintiff,

v.

FAGRELIUS CLARK,
STEPHEN GILES, and
ISOM,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Plaintiff Steven Angelo Apodaca brings this action against defendants Fagrelius Clark, Stephen Giles, and Tyson Isom, correctional officers at Sterling Correctional Facility, under 42 U.S.C. § 1983 and the Eighth Amendment, arising from an alleged excessive use of force and deliberate indifference to medical issues. ECF No. 107. He also brings a failure-to-intervene claim against Clark and Isom. *Id.* The defendants move to dismiss, contending that the complaint does not show excessive force or deliberate indifference. ECF No. 113. Isom and Clark move to dismiss the failure-to-intervene claim, asserting that they did not have an opportunity to intervene. *Id.* The defendants also assert that, in all events, they are entitled to qualified immunity. *Id.* Because the complaint fails to allege facts to establish a constitutional violation against Isom and Clark, the Court recommends that the motion be granted in part. The Court, however, recommends that the motion be denied on the excessive-force claim against Giles because the plaintiff adequately alleges that Giles violated his clearly-established rights.

## BACKGROUND

According to the Second Amended Complaint, whose factual allegations the Court accepts as true for this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), on April 5, 2024, the plaintiff requested to speak with a mental health clinician regarding his frustration with the handling of his Colorado Department of Corrections ("CDOC") grievance. ECF No. 107 at 4. Before being escorted to a mental health holding cell to speak with a mental health clinician, the plaintiff's feet were shackled and he was placed in handcuffs. *Id.* at 4–5. En route to the holding cell, because Giles was pushing him down the hallway, he informed Giles that he had documented medical issues regarding his lower back. *Id.* at 5. Giles, however, responded that he did not care. *Id.* Giles continued to apply pressure to his neck and upper back, so he again reminded Giles of his documented medical issues and informed Giles of his recent neck surgery. *Id.* Giles, again, told the plaintiff that he did not care. *Id.* The plaintiff turned his head to view Giles' name and, in response, Giles directed him to look straight ahead. *Id.* at 5–6.

Once at the holding cell, Clark asked the plaintiff whether he would comply with a strip out — submitting to a strip search — and in response, he answered in the affirmative, but requested that a mental health clinician be present because he believed that Giles was intentionally attempting to hurt him. *Id.* at 7. This angered Clark, who threatened to cut the plaintiff's clothes off. *Id.* While waiting for the correctional officers to retrieve the universal strip out restraints and scissors, he reminded Giles of his medical ailments because Giles continued to push on his upper back and neck. *Id.* When a correctional officer informed Clark that he could not find the scissors, the plaintiff, fearing that he was going to be injured, alerted the defendants that he would strip out without the presence of a mental health clinician. *Id.* at 7–8. Still, Giles placed a wrist restraint on the plaintiff, but placed it so tightly that it caused him to experience a

shock wave of pain that resulted in involuntary movement. *Id.* at 8. Giles used this opportunity to grab his head and neck and slam him into a concrete bunk. *Id.* One correctional officer then placed his knee on the plaintiff's back, a second correctional officer pushed against his right shoulder and arm, and a third correctional officer pushed on the left side of his back. *Id.* Following the incident, the plaintiff suffered from an egg-sized knot on his head, impaired vision in his left eye, and deep imprints on his left wrist that subsequently swelled. *Id.* at 8–9. At a disciplinary hearing, Isom testified that the plaintiff's movement was an involuntary reaction to the wrist restraints being placed too tightly and that Giles interpreted that involuntary movement as an act of aggression and "took him down." *Id.* at 14.

Subsequently, the plaintiff had x-rays taken, which showed no structural damage to his neck implants and no wrist fracture. ECF No. 107 at 9. Nevertheless, almost two weeks after the incident, the plaintiff was seen by a medical provider who noted that he still had a "two inch knot," was having trouble seeing out of his left eye, and felt dizzy and nauseated. *Id.* at 10. The provider ordered an MRI and noted that she believed that he was suffering from a concussion, though the MRI results did not reveal skull or "brain issues." *Id.*

The plaintiff then commenced this action. ECF No. 1. He was granted leave to proceed *in forma pauperis*, ECF No. 4, and the Court reviewed the plaintiff's complaint. ECF No. 5; *see* 28 U.S.C. § 1915(e)(2)(B). The Court ordered that the plaintiff file an amended complaint, and the plaintiff did so. *Id.* at 5; ECF No. 9. The Court then held a status conference — there, the plaintiff expressed that he wanted to dismiss two of his claims. ECF No. 68. The plaintiff then filed a second amended complaint. ECF No. 107.

This motion followed, and the district judge referred it to the undersigned. ECF No. 114.

## ANALYSIS

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677–78. Rule 12(b)(6) accordingly provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain sufficient factual matter, taken as true and viewed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, a court looks to whether "the plaintiff" has "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### I. Excessive Use of Force

"The use of excessive force by jail officials violates a prisoner's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when the prisoner is subjected to an 'unnecessary and wanton infliction of pain.'" *Miller v. Glanz*, 948 F.2d 1562, 1566 (10th Cir. 1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). When analyzing an excessive use of force claim, a court considers: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999) (citation modified).

The objective prong, for example, "is 'contextual and responsive to contemporary standards of decency.'" *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (quoting

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Indeed, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley*, 475 U.S. at 327). Put differently, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9.

The subjective prong "turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 320–21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see Hudson*, 503 U.S. at 8. "The 'malicious and sadistic' requirement applies regardless of whether the corrections officers are quelling a prison disturbance or merely trying to maintain order." *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (citing *Hudson*, 503 U.S. at 8). A court may "evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 8 (quoting *Whitley*, 475 U.S. at 321).

Before considering whether the defendants used excessive force, the Court addresses whether the plaintiff's complaint alleges sufficient personal participation on the part of Clark and Isom. It does not. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). That is, there must be an affirmative link between the alleged constitutional violation and each defendant's participation. *See, e.g.*, *Sherman v. Klenke*, 653 F. App'x 580, 590–91 (10th Cir. 2016). Here, the plaintiff does not allege facts that indicate that Clark or Isom used force against him. As such, the Court only considers his excessive force claim as to Giles.

That claim can be broken down to two incidents — Giles transporting the plaintiff to the holding cell and the takedown in the holding cell.

The plaintiff's allegations regarding the former boil down to Giles' pushing him down the hall despite being put on notice of the plaintiff's documented medical issues. These allegations, however, do not satisfy the objective prong, as pushing and shoving, without more, does not give rise to a constitutional violation. *Sims v. Miller*, 5 F. App'x 825, 830 (10th Cir. 2001); *see Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005). The plaintiff offers no argument to the contrary. While he proceeds pro se, and his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). As such, the plaintiff fails to state an excessive use of force claim regarding the first incident.

The plaintiff's second incident fares better. His complaint alleges that Giles placed a wrist restraint on him so tightly that it made him experience a shockwave, resulting in an involuntary movement, which Giles used as an opportunity to grab his head and neck and slam him into a concrete bunk. ECF No. 107 at 8. He asserts that three more correctional officers were involved: one placed his knee against the plaintiff's back, a second pushed against the plaintiff's right shoulder and arm, and a third correctional officer pushed on the left side of his back. *Id.* Giles raises no argument as to whether the plaintiff's second incident satisfies the objective prong, and it is no stretch of the imagination to conclude that slamming a person's head into a concrete bunk, causing a two-inch knot and impaired vision would be contrary to contemporary standards of decency. *See Smith*, 339 F.3d at 1212.

Instead, Giles says the plaintiff does not satisfy the subjective prong because Giles acted in good faith and to maintain order and ensure prison safety. ECF No. 113 at 7–8. To be sure, the plaintiff concedes that he was upset with the result of his CDOC grievance, had turned his body toward Giles, expressed dissatisfaction with how Giles was directing him down the hall, refused to consent to a strip out until a mental health clinician was present, and made a sudden movement while being restrained. *Id.* at 4–8. But he also alleges that Isom testified that he knew that the overly-tight wrist restraint caused the plaintiff's involuntary movement. ECF No. 107 at 14. Viewing the facts in the light most favorable to the plaintiff, as a court must on a motion to dismiss, *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023), this indicates that it was objectively knowable that the plaintiff was not resisting and instead moved his body involuntarily in response to the restraints. As such, Giles's use of the moment to slam the plaintiff's head into concrete could plausibly have been for the purpose of harming the plaintiff, rather than a legitimate response to aggression. *See, e.g.*, *Ali v. Duboise*, 763 F. App'x 645, 651–52 (10th Cir. 2019) (concluding that the plaintiff stated an excessive force claim when he "was thrown or caused to fall, either onto the floor or stairs . . . was not resisting the officer's actions, the officer used abusive language, and the officer's conduct resulted in significant injuries to him."). Accordingly, the plaintiff states an excessive force claim against Giles.

## II. Failure to Intervene

The plaintiff next asserts that Clark and Isom failed to intervene in Giles' use of excessive force. To hold a correctional officer liable for failing to intervene to stop another officer's alleged use of excessive force, a plaintiff must allege facts to demonstrate the officer had an opportunity to intervene and failed to take reasonable steps to prevent the use of excessive force. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008). That is, the plaintiff must

adequately allege that the defendants "(1) observed a constitutional violation and (2) had a realistic opportunity to intervene." *Mullins v. City of Colo. Springs*, 575 F. Supp. 3d 1360, 1372 (D. Colo. 2021) (citing *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015); *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)). Allegations of officers' "mere presence at the scene and their failure to stop any of the alleged constitutional violations committed by their fellow officers" are insufficient to state a claim for failure to intervene. *Bark v. Chacon*, 504 F. App'x 741, 746 (10th Cir. 2012).

Again, breaking the plaintiff's complaint into two incidents — Giles transporting the plaintiff to the holding cell and the takedown in the holding cell — the plaintiff cannot state a claim against Isom and Clark for the first incident. That is because "for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Winter v. Mansfield*, No. 21-3171, 2022 WL 3652464, at *11 (10th Cir. Aug. 25, 2022) (quoting *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015)). As concluded above, the first incident does not state an excessive-force claim.

The plaintiff's second incident, as applied to Clark and Isom, fares no better. The incident happened in a matter of seconds: Giles placed restraints on the plaintiff that made him involuntary move and immediately used force thereafter. Clark and Isom, then, had no opportunity to intervene. Indeed, the plaintiff does not provide any allegations indicating that Clark and Isom had the opportunity to "have done anything to prevent [Giles'] short, sudden use of force once it began." *Choate v. Huff*, 773 F. App'x 484, 488 (10th Cir. 2019). Accordingly, the Court recommends that the plaintiff's failure-to-intervene claim be dismissed.

**III. Deliberate Indifference to Medical Needs**

The defendants assert that, while on a phone call with the plaintiff, the plaintiff asserted that he has only prosecuted his excessive-force claim, and as such, the plaintiff's complaint does not assert a deliberate indifference to medical needs claim. ECF No. 113 at 2 n.2. Because the plaintiff has filed nothing indicating that he is dismissing his claim voluntarily, though, the Court considers it.

The Eighth Amendment is violated when a prison medical provider or other correctional officer acts with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). Where such a claim is alleged, "[t]he test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). "The objective component is met if the deprivation is 'sufficiently serious,'" that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A delay in medical care is only sufficiently serious if "the plaintiff can show the delay resuled in substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). A "lifelong handicap, permanent loss, or considerable pain" may satisfy the substantial harm requirement. *Id.*

In the prison context, "[t]he subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.'" *Mata*, 427 F.3d at 751 (quoting *Farmer*, 511 U.S. at 837). This standard is analogized to criminal recklessness, which makes a person liable when she

consciously disregards a substantial risk of serious harm. *Farmer*, 511 U.S. at 836–38. Negligence, even arising to medical malpractice, is therefore not enough to allege a constitutional violation. *Estelle*, 429 U.S. at 105–106.

The plaintiff does not allege that the defendants caused him a delay in treatment. To the contrary, he says that "a short time" after the incident, a lieutenant took a video recording of his injuries and "[a] short time later" a medical nurse visited him. ECF No. 107 at 9. These allegations do not support the idea that the defendants caused a delay in the plaintiff receiving medical attention. *See Wallin v. Dycus*, No. 03-CV-00174-CMA-MJW, 2009 WL 798839, at *10 (D. Colo. Feb. 25, 2009), *report and recommendation adopted*, 2009 WL 2490127 (D. Colo. Aug. 13, 2009), *aff'd*, 381 F. App'x 819 (10th Cir. 2010). Accordingly, the Court recommends that this claim be dismissed.

## IV. Qualified Immunity

Giles raises a defense of qualified immunity. ECF No. 113 at 13. Under that doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense, "the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Surat v. Klamser*, 52 F.4th 1261, 1270–71 (10th Cir. 2022) (quotation marks omitted). Courts may address the prongs in any order, *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010), and a failure "to establish either prong of the two-pronged qualified-immunity standard" means "the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016) (citations omitted).

To pass scrutiny under the first prong "the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)). As discussed above, the plaintiff has plausibly alleged an excessive use of force violation against Giles, thereby satisfying this prong.

To satisfy the second prong of the qualified immunity doctrine, the plaintiff must show that "the constitutional or statutory rights the defendant[s] allegedly violated were clearly established at the time of the conduct at issue." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534–35 (10th Cir. 1995)). That means, at the time of the challenged conduct, "the contours of a right" must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right." *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019) (quotation marks omitted).

Giles argues that no case on point clearly establishes the plaintiff's right. ECF No. 113 at 113 at 14–15. But a plaintiff is not required to cite a decision with "identical facts" to demonstrate a clearly established right. *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020). Demonstrating that clearly established law places the constitutional issue "beyond debate" is enough. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

It is sufficiently clear that throwing a shackled, non-resisting prisoner's head against concrete causing a two-inch knot and impaired vision would violate the plaintiff's constitutional rights. The Tenth Circuit has held that a plaintiff's allegations that he "was thrown or caused to

fall, either onto the floor or stairs . . . was not resisting the officer's actions, the officer used abusive language, and the officer's conduct resulted in significant injuries to him" stated an excessive-force claim. While the conduct may not be identical, it is similar enough. The plaintiff alleges that while handcuffed and being placed in a universal belly chain, Giles intentionally placed wrist restraints on him so tightly that he involuntarily moved. Even though he was not resisting, Giles still forcefully took him down hard enough to result in significant injuries.

Taking the plaintiff's version of the events as true, as the Court must do at this stage of the proceedings, Giles is not entitled to qualified immunity because the law was clearly established. *See Ali*, 763 F. App'x at 651–52; *see also Wright v. Gess*, No. 18-CV-03338-STV, 2019 WL 4464142, at *6 (D. Colo. Sep. 18, 2019). To be sure, discovery may reveal that the incident unfolded differently than the plaintiff tells it. But at this stage, he alleges enough.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS**[1] that the defendants' Motion to Dismiss, ECF No. 113, be **GRANTED in part and DENIED in part**. The Court recommends

[1] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.

that only the excessive force claim against Giles should be allowed to proceed—all other claims against the defendants should be dismissed without prejudice. *See Hall*, 935 F.2d at 1109–10. If any claims remain after the district judge's consideration of this Recommendation, the parties are instructed to contact the undersigned's chambers within seven days of that order to set a scheduling conference.

Respectfully submitted this 25th day of August, 2026, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge